70 F.3d 117
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Emanuel SANTANA, Petitioner-Appellant,
v.
Patrick W. KEOHANE, Respondent-Appellee.
 No. 93-3616.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 9, 1995.*
Decided Nov. 9, 1995.
 
 Before CUMMINGS, Circuit Judge, KANNE, Circuit Judge, and ROVNER, Circuit Judge.
 
 
 1
 Petitioner Emanuel Santana, a federal prisoner, appeals pro se the district court's denial of his 28 U.S.C. Sec. 2241 petition for a writ of habeas corpus to require federal prison officials to grant him credit for time he served on an unrelated state sentence which was subsequently vacated. The district court granted Santana credit for the time he spent in state pretrial custody, but denied him credit for the time he spent in state incarceration serving the state sentence. We affirm.
 
 BACKGROUND
 
 2
 In March 1976, Santana was sentenced to sixteen years' imprisonment for armed bank robbery in violation of 18 U.S.C. Sec. 2113. In November 1985, he was mandatorily released pursuant to 18 U.S.C. Sec. 4163.
 
 
 3
 Less than one month after his release, in December 1985, Santana was arrested in New Jersey on charges of robbery; possession of a weapon; theft; unlawful possession of a loaded weapon; receiving stolen property; resisting arrest; aggravated assault; arson; and possession of a weapon by a convicted person. Because he could not afford to post the $100,000 state bond, Santana remained in state custody while awaiting disposition of the charges against him. As a result of these state charges, the United States Parole Commission ("Commission") issued a warrant for his arrest in January 1986. Based upon the Commission's warrant, a federal detainer was lodged against Santana.
 
 
 4
 In November 1986, Santana pled guilty to the state charges and was sentenced in the New Jersey Superior Court to a 20-year term in prison, "concurrent but not coterminous" with any sentence imposed for his federal parole violation.
 
 
 5
 In June 1991, the Commission issued a Notice of Action ordering that Santana's mandatory release be revoked without any credit being awarded for time spent on mandatory release. The Commission also informed Santana that his parole violator term would begin upon his release from state custody or upon reparole to his state sentence, whichever came first.
 
 
 6
 In December 1991, Santana was paroled from his 20-year state sentence and was taken into federal custody, where he remains.
 
 
 7
 In January 1993, the New Jersey Superior Court permitted Santana to withdraw his previously entered guilty plea and to have his indictment relisted.
 
 
 8
 In July 1993, after exhausting his administrative remedies, Santana filed a petition in federal district court seeking a writ of habeas corpus. Santana alleged that the six years he spent in state custody (January 1986 to December 1991) on a subsequently vacated state sentence should be credited against the approximately 5 1/2 years remaining on his federal violator term. If the credit were granted, he argued, then he would be eligible for immediate release.
 
 
 9
 The district court denied Santana's petition. The court found that the time Santana served on his state sentence was not creditable toward the federal sentence because federal authorities neither caused the state charges to be filed nor caused the infirmity in the state guilty plea. However, the district court did find that Santana should have been credited for the time he spent in state pretrial custody between January 1986 and November 1986; according to the relevant Bureau of Prison Program Statement, Santana was entitled to credit from the date the federal detainer was lodged (January 24, 1986) up to the beginning date of his federal sentence (November 10, 1986). Santana appeals.[1]
 
 DISCUSSION
 
 10
 As a threshold matter, the government contends that we lack jurisdiction over this appeal because Santana failed to timely appeal the district court's judgment against him. We disagree. The district court issued its decision on August 18, 1993, and judgment was entered on the district court docket on August 23, 1993. For jurisdiction purposes, the date of entry of the judgment controls. See Fed.R.App.P. 4(a)(1). On August 31, 1993, Santana filed a notice of appeal (Docket No. 93-3120). On September 9, 1993, Santana filed with the district court a motion to reconsider or alter judgment under Federal Rule of Civil Procedure 59(e). The government argues that this motion was untimely because it was filed sixteen working days after the entry of judgment. However, as the government concedes (Appellee's Br. at 2 n. 2), Santana tendered his Rule 59(e) motion to prison authorities on September 3, 1993, which constitutes the date of service under Houston v. Lack, 487 U.S. 266, 270 (1988) and Simmons v. Ghent, 970 F.2d 392, 393 (7th Cir.1992). Moreover, Santana's certificate of service also reflects that he served a copy of the Rule 59(e) motion on the U.S. Attorney's Office in Indianapolis on September 3, 1993. Contrary to the government's contention, Santana's Rule 59(e) motion was timely.
 
 
 11
 Santana then filed a second notice of appeal on October 26, 1993 and, pursuant to Judge McKinney's recommendation, dismissed his first appeal. Because this case arose before the 1993 amendment to Rule 4(a)(3),[2] Santana's timely Rule 59(e) motion vitiated his August 31, 1993 notice of appeal. Thus Judge McKinney's recommendation that Santana dismiss his first appeal as a nullity was correct. Further, this is not a "unique circumstances" case, see Thompson v. INS, 375 U.S. 384, 387 (1964), in which Santana relied on a district court's direction to his detriment. Rather, Santana's Rule 59(e) motion suspended the time in which he could appeal the August 23, 1993 judgment until September 30, 1993, when the district court denied his Rule 59(e) motion. Santana timely filed his second notice of appeal on October 26, 1993, and we have jurisdiction to review both the judgment and the denial of Santana's Rule 59(e) motion.
 
 
 12
 Having concluded that we properly have jurisdiction over this appeal, we next turn to Santana's argument that he is entitled to credit against his federal sentence for the time he was in state custody serving the state sentence following the issuance and filing of the federal detainer. We review de novo the denial of a petition for a writ of habeas corpus. Rodriguez v. Peters, 63 F.3d 546, 554 (7th Cir.1995).
 
 
 13
 18 U.S.C. Sec. 3568 governs the granting of federal jail time credit in this case.[3] That section provides in part as follows:
 
 
 14
 The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed.
 
 
 15
 18 U.S.C. Sec. 3568. Courts have construed the statute literally. Since the federal sentence does not begin until the petitioner is "received at the penitentiary, reformatory, or jail," a petitioner's sentence cannot start to run before that time, even if the delay in the commencement of that sentence was due to an invalid state judgment. The sentence commences when the petitioner is taken into custody. In the present case, therefore, Santana's federal sentence commenced on December 2, 1991, when he was released by state authorities and delivered to federal custody.
 
 
 16
 Almost uniformly, federal courts have held that prisoners may not "bank" the time served on an invalid sentence to credit against a valid, subsequent sentence imposed for a totally unrelated crime. See, e.g., Bagley v. Rogerson, 5 F.3d 325, 329-30 (8th Cir.1993); Meagher v. Clark, 943 F.2d 1277, 1280 (11th Cir.1991); Pinaud v. James, 851 F.2d 27, 31 (2d Cir.1988); Scott v. United States, 434 F.2d 11, 21 (5th Cir.1970); Schmanke v. United States Bureau of Prisons, 847 F.Supp. 134, 138 (D.Minn.1994). Under dual sovereignty, federal authorities are entitled to the full service of the federal sentence, even if a prior state sentence has been vacated. See Pinaud, 851 F.2d at 31; see also Bagley, 5 F.3d at 329-30. Being separate sovereigns, the state and federal government are entitled to separate sentences. Pinaud, 851 F.2d at 32.
 
 
 17
 Relying on United States v. Gaines, 449 F.2d 143 (2d Cir.1971) (per curiam), Santana argues that had he been financially able to post the $100,000 state bail in January 1986, he would have been able to begin serving his federal sentence at that time. He reasons that because his indigence caused service of his federal sentence to be delayed rather than carried out immediately, he has suffered discrimination on the basis of his lack of wealth in violation of the equal protection clause. Santana urges that he be credited for the delay in commencing his federal sentence due to his obligation to complete a state sentence which subsequently was found to be invalid.
 
 
 18
 In Gaines, the petitioner was arrested on state charges while on bail from a federal narcotics conviction pending sentencing. After being sentenced on the federal charges, he was returned to state custody to face a pending state prosecution on unrelated charges. The state set bail but Gaines was unable to post the necessary state bond. Ultimately, the state charges were dismissed on the basis of newly discovered evidence, and Gaines was transferred to federal custody to begin serving his federal sentence. However, Gaines had been incarcerated for four months before being returned to federal authorities. On remand from the Supreme Court, the Second Circuit observed that Gaines was unable to enter into federal custody after bail was set "solely because he lacked sufficient funds to post bond in the state court which held him in custody." Id. at 144. Relying on prior Supreme Court decisions which held that "a man should not be kept imprisoned solely because of his lack of wealth," id. (citing Tate v. Short, 401 U.S. 395 (1971) and Williams v. Illinois, 399 U.S. 235 (1970)), the court held that Gaines was entitled to credit on his federal sentence for the four months he spent in state custody after bail was set.
 
 
 19
 In the present case, Santana has already received credit for the time he spent in state pretrial custody between January 1986 and November 1986.[4] He now seeks credit for the remaining period from November 1986 to December 1991 that he spent in state prison on his vacated sentence. Gaines is of little help to Santana. In that case, there was no state sentence against which to credit time accrued in presentence custody; consequently, Gaines' indigence ultimately led to a lengthier period of incarceration. Santana's state incarceration was not based on indigence as in Gaines, but rather on his plea of guilty to the state charges. The wealth-based discrimination present in Gaines does not exist here. Cf. United States v. Blankenship, 733 F.2d 433, 434-35 (6th Cir.1984) (in contrast to Gaines, presentence time could be credited against valid state conviction and valid state sentence). Even though Santana has since been allowed to withdraw his guilty plea, he may still be retried on the state charges at a later time.
 
 
 20
 Santana also argues that his position is supported by the Bureau of Prison's policy interpreting Sec. 3568, Program Statement 5880.24, entitled "Sentence Computation, Jail Time Credit under 18 U.S.C. Sec. 3568."[5] Specifically, he points to Sec. 5(c)(2)(b) of the program statement, which states in relevant part:
 
 
 21
 Credit will be given when a federal detainer is lodged, the prisoner does not make state bail based on a presumption of indigence, and the state fails to give jail credit for time. Credit will be given from the date the federal detainer was lodged up to the beginning date of either the federal or non-federal sentence, whichever occurs first. State bail must have been set.... Failure to give jail credit (by the state) may be assumed in any of the following events: ... (2) the state sentence is vacated with further prosecution deferred, thereby effectively vacating the state's award of jail credit....
 
 
 22
 Santana's reliance on this provision is misplaced. As he acknowledges (Appellant's Br. at 11), Sec. 5(c)(2)(b) grants him credit only up to the beginning date of his state sentence, or November 1986. We are not persuaded by Santana's suggestion that once his sentence was vacated it became a "non-event" and thus should be treated as if "it did not happen." Such an interpretation finds no support in either the case law or the plain language of the program statement itself. Santana is not entitled to credit for time spent in state custody serving his state sentence after November 1986.
 
 CONCLUSION
 
 23
 The district court correctly held that (1) Santana was entitled to credit against his federal sentence for the period of time spent in state pretrial custody between January 1986 and November 1986, and that (2) the time Santana served in state incarceration for his state sentence after November 1986 was not creditable toward his federal sentence. The judgment of the district court is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 Subsequently, in February 1994, the New Jersey Superior Court vacated its January 1993 order allowing Santana to withdraw his guilty plea, and reinstated Santana's state conviction. Nothing in the record before this court sheds light on the circumstances surrounding the state court's order. Five months later, in July 1994, the state court vacated its February 1994 order and reinstated its January 1993 order allowing Santana to withdraw his plea of guilty. Again, the record does not reflect the reasons for the court's ruling
 
 
 [2]
 Before the 1993 amendment, a party was required to file a new appeal after the post-judgment motion's disposition under penalty for lack of jurisdiction. See, e.g., Griggs v. Provident Consumer Discount Co., 459 U.S. 56 (1982); Alerte v. McGinnis, 898 F.2d 69 (7th Cir.1990). Under the new rule, an appeal filed before the disposition of a Rule 59(e) motion is suspended and springs into force when the district judge acts on the motion
 
 
 [3]
 The statute was repealed as part of the Sentencing Reform Act and does not apply to offenses committed after November 1, 1987. However, for crimes committed before this date--as in the present case--Sec. 3568 still governs the calculation of federal sentences. See Pub.L. 98-473, Title II, Secs. 212(a)(2) & 235(a)(1), 98 Stat. 1987, 2031 (1984); Sinito v. Kindt, 954 F.2d 467, 469 n. 3 (7th Cir.), cert. denied, 504 U.S. 961 (1992)
 
 
 [4]
 In its response brief, the government challenges the district court's judgment that Santana is entitled to credit for the time he spent in pretrial state custody. Because the government failed to file a cross-appeal, however, this issue is beyond the permissible scope of our review. Chowaniec v. Arlington Park Race Track, Ltd., 934 F.2d 128, 130 (7th Cir.1991)
 
 
 [5]
 Although this Program Statement was rescinded in July 1993 and replaced by Program Statement 5880.30 (1993), the differences between the two are insignificant under the present facts